NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| TRINOVA GARDEN STREET CONDIMINIUM ASSOCIATION, INC., and MICHAEL MARSHALEK,<br><br>Plaintiffs,<br><br>v.<br><br>WRIGHT NATIONAL FLOOD INSURANCE COMPANY f/k/a FIDELITY NATIONAL INDEMNITY INSURANCE COMPANY,<br><br>Defendant | Civil Action No. 2:15-4195 (JAD)<br><br>OPINION |

**JOSEPH A. DICKSON, U.S.M.J.**

This matter comes before the Court by way of Plaintiffs' motion requesting that the Court amend certain of the findings of fact and conclusions of law set forth in its August 30, 2017 Opinion. (ECF No. 52). In accordance with Federal Rule of Civil Procedure 78, the Court did not hear oral argument on Plaintiffs' application. Upon careful consideration of the parties' submissions, and for the reasons stated below, Plaintiffs' motion is **DENIED**.

**I.     RELEVANT BACKGROUND AND PROCEDURAL HISTORY**

This matter involves a dispute over the coverage available for damages related to Superstorm Sandy pursuant to a National Flood Insurance Program insurance policy that Defendant Wright National Flood Insurance Company issued to Plaintiff Trinova Garden Street Condominium Association, Inc. ("Trinova"). (See generally Compl., ECF No. 1). The Court provided a recitation of the relevant factual background for this matter in its August 30, 2017

Opinion, (Aug. 30, 2017 Opinion, Findings of Fact Nos. 1-15, ECF No. 45) and, in the interests of brevity, incorporates that information herein by reference.

On February 8 and March 6, 2017, this Court conducted a bench trial regarding the discrete issue of whether, at the time of Superstorm Sandy, Plaintiff Michael Marshalek's condominium unit was a "basement" under the terms of the relevant flood insurance policy. After careful consideration of the witness testimony and items entered into evidence at trial, as well as the parties' post-trial submissions, (ECF Nos. 39-43), the Court issued an Opinion dated August 30, 2017. (ECF No. 45). That Opinion included 46 separate findings of fact and 9 conclusions of law. (See generally, id.). On October 17, 2017, and after consultation with the parties, this Court entered judgment in favor of Defendant on both claims of Plaintiffs' Complaint "to the extent those claims turn on" the "basement" issue. (Oct. 17, 2017 Order Entering Judgment at 2, ECF No. 50).[1] On November 15, 2017, Plaintiffs timely filed a motion requesting that the Court amend its findings of fact pursuant to Federal Rules of Civil Procedure 52 and 59. Defendant filed an opposition on December 1, 2017. (ECF No. 53).

## II. **LEGAL DISCUSSION**

Federal Rule of Civil Procedure 52(a)(1) provides, in pertinent part: "In an action tried on the facts without a jury . . ., the court must find the facts specially and state its conclusions of law separately. The findings and conclusions may be stated on the record after the close of evidence or may appear in an opinion or memorandum of decision filed by the Court." Rule 52(b) provides that, upon a party's timely motion, "the court may amend its findings – or make additional findings – and may amend the judgment accordingly." "The purpose of this rule is to allow the court to

---

[1] The Court did not enter judgment on the entirety of those claims, as the parties advised the Court that Plaintiffs' claims also addressed certain of Defendant's coverage decisions that were unrelated to the "basement" issue, and therefore not addressed at trial.

correct plain errors of law or fact, or, in limited situations, to allow the parties to present newly discovered evidence." Roadmaster (USA) Corp. v. Calmodal Freight Sys., 153 F. App'x 827, 829 (3d Cir. 2005). Plaintiffs also seek relief under Federal Rule of Civil Procedure 59(e), which provides that "[a] motion to alter or amend a judgment must filed no later than 28 days after the entry of the judgment." The Court notes, however, that "[m]otions under Rule 59(e) and 52(b) are both motions for reconsideration, and the standard is highly similar, if not identical." Lugus IP, LLC v. Volvo Car Corp., No. 12-2906 (RBK), 2015 U.S. Dist. LEXIS 152374, at *4 (D.N.J. Nov. 9, 2015) (citing Vega v. U.S. Dep't of Justice, 178 Fed. App'x 176, 177 (3d Cir. 2006)); compare Roadmaster (USA) Corp., 153 App'x at 829, with Lazaridis v. Wehmer, 591 F.3d 666, 669 (3d Cir. 2010) (citing N. River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995) ("A proper Rule 59(e) motion therefore must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice."). The Court will therefore consider the application of both Rules in a single legal analysis.

Plaintiffs do not contend that the Court based its judgment on any plain errors of law or that the parties obtained new evidence after the Court tried this matter and issued its August 30, 2017 Opinion. (See generally, Pl. Br., ECF No. 52-1). Rather, Plaintiffs argue that the Court's decision is premised on two distinct factual errors. First, Plaintiffs suggest that the Court erred by failing to attribute at least two margins of error to Defendant's expert's measurements. (Id. at 3-5). Second, Plaintiffs contend that, because Defendant's expert's measurements indicated that the ground in an adjacent yard is sloping down from Mr. Marshalek's condominium unit, that necessarily means that Mr. Marshalek's unit is above grade. (Id. at 5-6). The Court will address each point in turn.

### i. The Margin of Error for Defendant's Expert's Measurements

Plaintiffs first take issue with the Court's decision to assume that Defendant's expert John Garner's measurements involved a total margin of error of one-quarter inch. (Id. at 3-5). Plaintiffs argue that, based on Mr. Garner's testimony, the Court should have applied two or more margins of error (of one-quarter inch each) to his measurements, and that, after adjusting those measurements accordingly and applying them to the Court's other findings, the record before the Court would establish that Mr. Marshalek's unit was above grade at the time of Superstorm Sandy. (Id. at 3-5). The Court must unpack this argument piece by piece.

First, Plaintiffs take issue with the Court's determination that, in light of the short distances involved here, the margins of error for Mr. Garner's measurements were "almost negligible" and that it was appropriate to assume a margin of error of a quarter of an inch given Mr. Garner's use of the fence separating Mr. Marshalek's property and the backyard of 205 8th Street. (Id.). Plaintiffs correctly note that Mr. Garner used the "almost negligible" language when referring to his rotary laser device itself, and that Mr. Garner clarified that it was his use of a measuring rod in connection with the laser device that introduced a potential margin of error of up to a quarter of an inch for each measurement. (See March 6, 2017 Tr. at 74:25-76:2). When asked directly about whether his measurements therefore involved multiple margins of error, however, Mr. Garner twice explained that his use of the top of the fence to "tie" the measurements together alleviated the problem, and that the only margin of error at issue involved the fence itself. (Id. at 76:3-13; 77:14-78:16). Mr. Garner testified that there could have been a margin of error of up to a quarter of an inch inherent in his measurements of the height of that fence, given the rough nature of the top of the fence. (Id. at 76:1-13; 78:17-23). While, in hindsight, the Court agrees that it could have provided a more extensive explanation of the rationale underlying its assumption on the

margin of error issue, it did not err in assuming a single, quarter-inch margin of error based on Mr. Garner's testimony.

Second, even assuming that each of Mr. Garner's measurements were off by up to a quarter-inch, and that Mr. Garner did not address that issue when he tied those measurements together using the fence, as described above, Plaintiffs' conclusion (i.e., that, when Mr. Garner's measurements are adjusted to account for the margins of error, those measurements demonstrate that Mr. Marshalek's unit was above-grade) would require: (1) that the Court apply the maximum potential value of each margin of error; and (2) that the Court apply both of those margins of error in Plaintiffs' favor. The Court is certainly not required to do so. Nor would it, if forced to resolve the issue. Plaintiffs, who bear the burden of proof on their claims, have certainly not adduced any evidence demonstrating that any mistakes in Mr. Garner's measurements must necessarily inure to their benefit, let alone that they do so to the maximum extent possible. If Mr. Garner's measurements were incorrect, it is just as likely that they were off by less than a quarter-inch, that any errors in Mr. Garner's multiple measurements canceled each other out, or that the ground directly adjacent to Mr. Marshalek's apartment was actually <u>higher</u> than Mr. Garner measured.

Third, even if the Court were assume that Mr. Garner's measurements were off by more than a quarter-inch, that would not change the Court's ultimate determination that Mr. Marshalek's condominium unit was a "basement" under the terms of the relevant flood insurance policy. Contrary to Plaintiffs' representation, the Court certainly did not find that "the floor at the time of Superstorm Sandy was 2 ½ inches higher than the floor that was measured by Mr. Garner." (Pl. Br. at 5, ECF No. 52-1). Rather, the Court simply found that "the tile floor in place in the second bedroom at the time Mr. Garner made his measurements was lower than the finished wood floor in place at the time of Superstorm Sandy", and did not make any specific findings regarding the

extent of that height difference. (Aug. 30, 2017 Opinion, Finding of Fact No.41, ECF No. 45). The only evidence in the record regarding that difference came from Mr. Marshalek. The Court went on to catalog the multiple problems with Mr. Marshalek's measurements and conclusions regarding that height differential, and explicitly found that his opinion was "based on too many approximations . . . and assumptions to be reliable or persuasive . . .." (Id.). The Court did not need to make specific findings on the height differential issue in light of its assumption attributing a quarter-inch error (in Plaintiffs' favor) to Mr. Garner's measurements. The Court therefore assumed, purely for the sake of argument, and expressly without making a factual finding, that Mr. Marshalek's opinion on the height differential was correct, and that the current tile floor in Mr. Marshalek's unit (i.e., the surface that Mr. Garner used in his measurements) is 2.5 inches lower than its hardwood predecessor. (Id.). If the Court revisits the margin of error issue, it must also revisit the height differential issue, and Plaintiffs have not adduced any reliable, persuasive evidence on that point. The Court's judgment would, therefore, would remain the same even if Mr. Garner's measurements were off by more than a quarter inch, and the Court applied that error exclusively in Plaintiffs' favor.

### ii. **Plaintiffs' "Downward Sloping" Argument**

Plaintiffs argue that "[t]he Court's conclusion does not take into consideration Mr. Garner's concession that the ground along the side of Mr. Marshalek's building is sloping lower from Mr. Garner's measurement at the fence post." (Pl. Br. at 5, ECF No. 52-1). Specifically, Plaintiff points out that Mr. Garner measured the ground directly adjacent to Mr. Marshalek's unit at 97.34 feet, and that "the yard adjacent to Mr. Marshalek's building slopes down to 97.28 feet at the fence for the building adjacent to Mr. Marshalek's building." (Id.). Plaintiff argues that "the .72 inch slope of the yard indicates that the floor of Mr. Marshalek's apartment is, at some point,

approximately .59 inches higher than the ground outside." (Id. at 6). When Plaintiffs refer to Mr. Garner's measurement of "97.28 feet", they are describing a measurement that Mr. Garner took of a point approximately halfway across the yard neighboring Mr. Marshalek's unit on the northeast side. (See Cert. of Adam J. Budesheim, Ex. B, ECF No. 52-2).

As an initial matter, the Court notes that Plaintiffs did not make this argument in their post-trial briefing, (see generally Pl. Trial Br., ECF No. 43), and are raising it for the first time on what is essentially a request for reconsideration. Plaintiffs previously mentioned the sloping issue solely to rebut Defendant's "positive drainage" argument, (Id. at 11-12), which the Court itself rejected as irrelevant to the pertinent legal analysis. (Aug. 30, 2017 Opinion, Conclusion of Law No. 4, ECF No. 45). Plaintiffs did not previously seek to use the relative height of the ground approximately halfway across the neighboring yard to establish whether Mr. Marshalek's unit was a "basement" under the terms of the relevant flood insurance policy. (See generally Pl. Trial Br., ECF No. 43). To the contrary, Plaintiffs explicitly, and repeatedly, argued that "the relevant ground for the purpose of determining relative elevation is the ground immediately adjacent to the building." (Id. at 11); (id. at 3) ("The proper measurement point is the ground adjacent to the building."). The Court agreed, and adopted Plaintiffs' position as one of its conclusions of law. (Aug. 30, 2017 Opinion, Conclusion of Law No. 5, ECF No. 45). Plaintiffs have not challenged that conclusion of law in their motion.

Plaintiffs nevertheless now seek to use the measurement of a point that is not immediately adjacent to Mr. Marshalek's condominium unit to establish the relative elevation of that unit. Plaintiffs' new argument runs contrary to the Court's unchallenged legal conclusion on this point, as well as their own previous position on this issue. The parties provided their respective measurements of a point directly adjacent to Mr. Marshalek's condominium unit, and the Court

considered and evaluated those measurements in reaching its determination.[2] If the ground slopes down from that adjacent point as it moves northeast across the adjacent yard, that downward sloping is irrelevant to the Court's analysis.

## III. CONCLUSION

Based on the foregoing, Plaintiffs' motion, (ECF No. 52), is **DENIED**. An appropriate form of Order accompanies this Opinion.

*[signature]*

**Joseph A. Dickson**
**United States Magistrate Judge**

---

[2] Plaintiffs did not provide measurements of any other "directly adjacent" points.